IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:20 CV 60 WCM

| | |
|---|---|
| SANDRA KENNEDY, | )<br>)<br>) |
| Plaintiff, | )<br>) MEMORANDUM OPINION |
| v. | ) AND ORDER<br>) |
| COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 11, 12).[1]

## I. Procedural Background

Plaintiff Sandra Kennedy ("Plaintiff") filed an application for disability insurance benefits, alleging disability beginning August 11, 2015. Transcript of the Administrative Record ("AR") at 186.

Plaintiff subsequently modified her application to request a closed period of benefits from the alleged onset date of August 11, 2015 through June 1, 2018. See AR at 15.

---

[1] The parties have consented to the disposition of this matter by a United States Magistrate Judge. Doc. 9.

1

On March 27, 2019, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR at 12-32. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the following severe impairments: "multiple sclerosis with resulting neurocognitive disorder; degenerative disc disease of the cervical spine; depression; and anxiety." AR at 18. The ALJ then considered Listing § 11.09 for multiple sclerosis ("MS") and found that Plaintiff's symptoms did not meet or medically equal the Listing's criteria. AR at 19.

The ALJ also found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work . . . except that she can no more than frequently climb ladders, ropes, scaffolds, ramps, and stairs; frequently balance and crawl; and frequently handle and finger. The claimant must avoid workplace hazards such as unprotected heights and dangerous moving machinery, can perform no overhead lifting, and can perform no detailed or complex tasks.

AR at 21.

Applying this RFC, the ALJ found that Plaintiff had the RFC to perform certain jobs that exist in significant numbers in the national economy, AR at

2

26, and therefore that Plaintiff had "not been under a disability . . . from August 11, 2015, through the date of this decision." AR at 27.

## III. Plaintiff's Allegations of Error

Plaintiff makes three allegations of error: 1) that the ALJ erred in concluding that Plaintiff's impairments did not meet or medically equal the criteria of Listing § 11.09; 2) that the ALJ failed to give sufficient weight to the opinion of Plaintiff's treating physician; and 3) that the ALJ failed to consider adequately Plaintiff's limitations in performing fine and gross movements.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the

3

Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

A. Listing § 11.09

The Listings detail impairments that are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a) & 416.925(a). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013). The burden of presenting evidence that an impairment meets or is medically equivalent to a listed impairment lies with the claimant. Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir.

4

1986). An impairment meets a listing if it satisfies all the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). To establish medical equivalence, a claimant must "present medical findings equal in severity to all the criteria" for the particular listing. Id. at 531.

Listing § 11.09 addresses MS. Plaintiff contends that during the period for which she is asserting disability, extensive medical records show that she met the requirements of either Listing § 11.09(A) or (B).

### 1. Listing 11.09(A)

Listing § 11.09(A) requires a showing of disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, to balance while standing or walking, or the ability to use the upper extremities. 20 CFR § 404, Sbpt. P. Appendix 1, § 11.09(A).

Here, the ALJ noted that Plaintiff "remains able to rise from a chair, balance when standing or walking, and to use her arms." AR at 19. In making this finding, the ALJ cited a Function Report completed by Plaintiff on October 24, 2016, which was within the period of alleged disability. AR at 19 (citing AR at 273-280). As noted by the ALJ, Plaintiff reported that she was able to care for herself and her minor son, drive a car, and shop for groceries. Plaintiff additionally reported that she was able to walk "1/2 mile average" before

5

needing to rest, and did not indicate the need for any ambulatory devices or braces. AR at 278-279.

Plaintiff cites medical records reflecting her complaints of extreme pain, as well as reports of numbness and weakness. See Doc. 11-1 at 7-8 (citing, e.g., AR at 536 (reporting pain level of 10/10), AR at 689 (heel pain that was exacerbated by walking), AR at 671 (left-side pain, which worsened with twists or certain movements), AR at 693 (severe pain in her right trapezius region, rated at a 10/10 and worsened with all activity), AR at 402 (complaint of continuous numbness in her left hand, mild weakness in the upper left extremity, and intermittent numbness in her right lower extremity), AR at 579 (mild weakness in her upper left extremity), AR at 581 (demonstrated mild weakness in Plaintiff's upper left extremity), AR at 683 (sharp pain in Plaintiff's right heel). Plaintiff does not, however, cite to medical evidence reflecting an extreme limitation in her ability to "stand up from a seated position, balance while standing or walking, or use [her] upper extremities."

### 2. Listing § 11.09(B)

Pursuant to Listing §11.09(B), a claimant must exhibit a marked limitation in physical functioning as well as a marked limitation in one of the four areas of mental functioning (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining

6

pace; or adapting or managing oneself). 20 CFR § 404, Sbpt. P. Appendix 1, § 11.09(B).

The ALJ found that Plaintiff had a moderate limitation in the area of understanding, remembering, or applying information, and mild limitations in the other three areas of mental functioning. AR at 20.[2]

With respect to Plaintiff's ability to understand, remember, or apply information, the ALJ acknowledged that Plaintiff reported short-term memory loss, and that a psychological consultative examiner, John Bevis, concluded that Plaintiff had moderate difficulties in this area; however, the ALJ again pointed to Plaintiff's Function Report and her self-reported ability to drive and live independently, and care for her son. AR at 20 (citing AR at 619, 416, 273-280).

Regarding Plaintiff's ability to interact with others, although the ALJ noted Mr. Bevis' conclusion that Plaintiff's "ability to relate to others including coworkers and supervisors on a day-to-day basis appears to be severely impaired," AR at 20 (citing AR at 416), she also noted that other physicians

---

[2] Areas of mental functioning are rated on a five-point scale. See Listing 12.00(F)(2). When a claimant's ability to function in an area independently, appropriately, effectively, and on a sustained basis is "fair," the claimant is considered to have a moderate limitation. Listing 12.00(F)(2)(c). A claimant is considered to have a "marked limitation" in an area of mental functioning when his or her ability to function independently, appropriately, and effectively on a sustained basis "is seriously limited." Listing 12.00(F)(2)(d). An "extreme limitation" is found when a claimant is unable to function in the specific functional area. Listing 12.00(F)(2)(e).

had reported Plaintiff having a "normal" affect. AR at 20 (citing AR at 616, 619). This information, in conjunction with the absence of issues interacting with doctors, consultants, and her attorney, led the ALJ to conclude that Plaintiff had no more than a mild limitation in this area.

Regarding Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ again acknowledged Mr. Bevis' opinion, which stated that Plaintiff's "ability to sustain attention and concentration adequately to perform simple repetitive tasks throughout the day appears to be moderately-to-severely impaired." AR at 20 (citing AR at 416). Additionally, however, the ALJ cited to Plaintiff's testimony that she made jewelry while unemployed, which she was able to do for thirty minutes at a time, and that at the time of the hearing, her job involved compiling information for a retail store. AR at 20 (discussing AR at 51-52 & 49).[3]

---

[3] Specifically, Plaintiff was working as a "quoting coordinator" beginning in September 2018. See AR at 48-49. In a closed period case, an ALJ may "consider evidence outside a closed period of disability if that evidence is 'probative' of disability within the closed period." Charlene L. v. Saul, No. 3:19CV626 (REP), 2021 WL 725822, at *8 (E.D. Va. Feb. 3, 2021), report and recommendation adopted, No. 3:19CV626-REP, 2021 WL 725078 (E.D. Va. Feb. 24, 2021) (internal citations omitted). Such evidence should be viewed "with caution" and should only be considered "to the extent that it might support a finding of onset *during the relevant period.*" Williams v. Astrue, No. 3:11CV208-JAG, 2012 WL 1267890, at *3 (E.D. Va. Mar. 28, 2012), report and recommendation adopted, No. 3:11CV208-JAG, 2012 WL 1252620 (E.D. Va. Apr. 13, 2012) (emphasis in original). Although the ALJ referenced this evidence, she also relied on evidence from during the closed period in drawing her conclusion.

Finally, with respect to Plaintiff's ability to adapt or manage herself, the ALJ explained that Plaintiff had adapted to significant life changes, such as becoming an out-of-work single parent and managing her own medical condition, and that Plaintiff did not require a facility or protected environment in which to live. For these reasons, the ALJ concluded, Plaintiff did not have more than a mild limitation in this area.

Plaintiff argues that the ALJ erroneously found that Plaintiff had no marked or severe impairments among the mental health criteria, despite overwhelming evidence to the contrary. Doc. 11-1 at 9. In support of that position, Plaintiff points to the mental residual functional capacity assessments conducted by the state agency reviewers upon initial review and reconsideration (AR 89-91; 107-109), as well as the opinion of the consultative examiner, Mr. Bevis. AR 412-416. The state agency consultants, however, did not opine that Plaintiff had any marked or severe impairments. Although Mr. Bevis opined that Plaintiff had "moderate-to-severe" or "severe" impairments in certain areas of mental functioning, the ALJ explained adequately why she found such opinions unpersuasive.

Accordingly, Plaintiff has not established that the ALJ erred in finding that the severity of Plaintiff's MS symptoms failed to meet or medically equal Listing §11.09.

9

## B. Weight Given to Treating Physician's Opinions

On November 9, 2016, Plaintiff's treating neurologist, Dr. Douglas Jeffrey, completed a medical source statement in which he agreed that Plaintiff "meets the criteria for §11.09," that Plaintiff "experiences fatigue, chronic pain, difficulty with concentration and memory, anxiety and diffuse muscle weakness that prevents" work on a regular, sustained basis, and that Plaintiff would be absent from work 3-4 days per month due to her symptoms. AR at 378-380. Dr. Jeffrey further indicated that Plaintiff could perform a job in a seated position for 1-2 hours in an eight-hour day, could perform a job standing and/or walking for less than one hour at a time, needed to elevate her right leg, could "never/rarely" lift or carry any amount of weight or engage in certain gross and fine manipulations of her left hand, and could only occasionally engage in such manipulations of her right hand. Id.

The ALJ assigned Dr. Jeffrey's opinion, as set forth in his medical source statement, "little weight." Plaintiff contends that the ALJ's treatment of Dr. Jeffrey's opinion was reversible error.

"[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); see also SSR 92-2P, 1996 WL 374188. "'While

10

the Secretary is not bound by the opinion of a claimant's treating physician, that opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Therefore, it may be disregarded only if there is persuasive contradictory evidence.'" Bryant ex rel. Bryant v. Barnhart, 63 F. App'x 90, 95 (4th Cir. 2003) (quoting Smith v. Schweiker, 795 F.2d 343, 345–46 (4th Cir.1986)); see also Bramblett v. Colvin, No. 2:14-CV-00011-RLV, 2016 WL 1249297, at *4 (W.D.N.C. March 30, 2016) ("where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments").

However, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (internal citations omitted).

Here, the ALJ assigned Dr. Jeffrey's opinion "little weight" because, among other things, the ALJ found that opinion to be "inconsistent" with medical examination results found in Dr. Jeffrey's own records. AR at 24. The ALJ specifically cited Dr. Jeffrey's November 19, 2014 and June 22, 2016 medical examination notes, both of which reflect, on Plaintiff's motor exam,

11

that "[p]ower was full in both upper and lower extremities in all muscle groups proximally and distally. Tone and bulk were within normal limits. Finger to nose testing was normal. Rapidly alternating movements were intact. Gait was normal." AR at 350 (June 22, 2016 exam); AR at 490 (November 19, 2014 exam). Additionally, the ALJ explained that during a February 18, 2016 appointment at OrthoCarolina, Plaintiff was noted to have 5/5 strength throughout "all major muscle groups in the bilateral upper extremities…." AR at 24 (citing AR at 693).

Plaintiff cites to certain of Dr. Jeffrey's exam notes which indicate that Plaintiff experienced pain, numbness, and weakness. See Doc. 11-1 at 13-14 (citing, e.g., AR at 400 (June 22, 2016 notes reflecting complaint of neck pain and intermittent numbness); AR at 402-403 (October 14, 2016 complaint of left-hand numbness and reflecting that "[i]n the left upper extremity there is mild proximal weakness which is new")). However, these notes (some of which were explicitly cited by the ALJ) reflect Plaintiff's "full power" in all extremities or "full power" in all but the left upper extremity (for which "mild proximal weakness" was noted). Plaintiff does not explain how such examination notes are consistent with Dr. Jeffrey's medical source statement.

Additionally, Plaintiff argues that other evidence in the record supports Dr. Jeffrey's opinions. See Doc. 11-1 at 14-18.

12

With respect to Plaintiff's physical limitations, Plaintiff points out that on September 1, 2015, a Functional Capabilities Report by Physician's Assistant Sheila Chervil limited Plaintiff to frequently lifting no more than 10 pounds, no climbing, no reaching overhead, no bending, no squatting, and no crawling, among other limitations. AR at 448-449. Although the ALJ agreed with the prohibition on overhead reaching as set out by Ms. Chervil, she assigned the remainder of that opinion "little weight" as inconsistent with medical records (discussed above) reflecting "full power" in all extremities. AR at 25 (citing AR at 350). Additionally, Plaintiff points to a December 7, 2015 examination during which Dr. Alden Milam referred to Plaintiff's "severe pain" and stated that he "[did] not think she will be capable of working at this point." AR at 543. That same note, however, also indicates that Plaintiff was to return in one month, and that Dr. Milam was hopeful Plaintiff would "feel better, and we can consider allowing her to return back to work." AR at 543.

With respect to Plaintiff's mental limitations, the ALJ assigned "more weight" to the state agency consultants' opinions that Plaintiff was limited in her ability to carry out detailed instructions but should be able to understand, remember, and follow simple instructions as "consistent with the claimant's ability to live independently and care for a minor child and engage in jewelry making." AR at 24; see also AR at 89-91; 107-109. Plaintiff's RFC includes a

finding that Plaintiff cannot perform detailed or complex tasks, a limitation that appears consistent with the state agency consultants' opinions.[4]

The undersigned is therefore not persuaded that the ALJ committed reversible error with regard to Dr. Jeffrey's opinion.

### C. Gross and Fine Movement Limitations

Plaintiff argues that while the ALJ acknowledged Plaintiff's limitations in handling and fingering in both hands, the ALJ erred in finding Plaintiff was limited to "frequent," rather than "occasional" or "rare," handling and fingering, and that had the ALJ considered her hand limitations appropriately, the jobs identified by the vocational expert and ultimately used to support the ALJ's determination that Plaintiff was not disabled would have been precluded.

In arguing that greater manipulative limitations were warranted, Plaintiff points to Dr. Jeffrey's medical source statement, which indicated more severe manipulative limitations, and the Functional Capabilities Report completed by Ms. Chervil. See AR at 380 (Dr. Jeffrey); AR at 449 (Ms. Chervil). Dr. Jeffrey reported that Plaintiff could never or rarely grasp or use her fingers on her left hand for fine manipulations and could occasionally perform such

---

[4] Plaintiff also points to Mr. Bevis' consultative examination report, which includes more restrictive limitations. Significantly, both state agency consultants noted that Mr. Bevis' opinion was an "overestimate" of the severity of Plaintiff's limitations. AR at 91 & 109.

14

manipulations with her right hand. AR at 380. Ms. Chervil found that Plaintiff could not perform simple grasping, pulling and pulling, or keyboard operation. AR at 449. The ALJ did not discuss these opinions explicitly.

However, the ALJ noted that although Plaintiff reported numbness in her hands, treatment with an oral prednisone taper resolved symptoms of left-hand numbness. AR at 23 (citing AR at 420 (February 3, 2017 medical exam notes)). The ALJ additionally noted that Plaintiff reported making jewelry. AR at 23. The ALJ also cited the state agency consultants' opinions regarding Plaintiff's manipulative limitations. AR at 23-24 (discussing AR at 88 (initial agency review; Plaintiff limited to frequent handling and fingering on the left hand due to "mild proximal weakness") and AR at 106 (agency review on reconsideration; Plaintiff limited to frequent handling and fingering on the left hand)). Although these state agency consultants only imposed manipulative limitations with respect to Plaintiff's left hand, in light of Plaintiff's hearing testimony (in which Plaintiff testified to problems regarding her right hand), the ALJ assigned bilateral manipulative limitations.

Although Plaintiff argues that the ALJ failed to provide an explanation as to why Plaintiff was found able to engage in "frequent" handling or fingering, the ALJ's opinion provided a sufficient explanation as to those findings.

## VI. Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 11) is **DENIED**, and the Commissioner's Motion for Summary Judgment (Doc. 12) is **GRANTED**.

Signed: August 27, 2021

W. Carleton Metcalf
United States Magistrate Judge